Judg® Underwood
delivered the opinion of the Court.
' The appellants, as trustees for Mrs,. Richardson and her children, instituted an action of-* replevin against the appellee. Four negroes were the^ subject of the controversy. Harriss relied upon the*”’ following facts, which were set out in twopleas, as his defence, to wit: that two executions were placed ii$*. ins hands, he being coroner of Anderson county. *123 against the estate of John C. Richardson; that in virtue of said executions, and while they were in full force, he levied on the slaves, in the declaration mentioned, they being in the possession of the said Richardson ; that he advertised the slaves forsale, according to law, permitted them to remain with said Richardson,* and took his bond, with surety,.tohave them forthcoming, on the day of sale; thathe gave.the plaintiffs, who claimed the property, ten days previous-notice, of’t the time and place of sale; that in pursuance of the act of assembly, in such cases made and provided, he. summoned a jury, to try the right of said slaves; that the jury were empannelled and sworn according to law; and that the claimants, to wit: the plaintiffs, didf-not succeed in establishing the property to. be.theirs, the jury not agreeing.
Whatever h well set forth in plea, and not denied in replication, is-' admitted to be true.
To the.fads, thus set forth in. the defendant’s pleas, the plaintiffs, in substance replied, that they were the. owners, in fee, of the slaves in contest, the same having been conveyed to them, in trust, for the use oiHf Mrs. Richardson, wife of said JohnC. Ridhardson, by Samuel Arbuckle, who was seised at the date of hiyi «onveyance, and that, for the purpose of effectuating the terms of the trust, they delivered the slaves, in the declaration mentioned, to said Richardson and wife, to be held by them, as bailees of the plaintiffs and that, said slaves, at the time of the levy of said executions, were held and possessed, by said Richardson and'wife, as the bailees of the plaintiffs, and not in the proper right Of said Richardson, as his owajj property. To the replications of the plaintiffs, the defendant demurred. The court gave judgment on the demurrer, for the defendant, to reverse which, theX plaintiffs have appealed.
It is a principle in pleading, that whatever is well set forth in a plea and not controverted in the replication, is admitted to be true. ■ Thus, all the material facts stat'ed in the pleas,, in this case, are admitted; and the plaintiff’s attempt to avoid them, by asserting title in themselves, to the slaves. Two questions are made upon the record:
1st. Can the owner of personal property, or a chattel, taken in execution, and who is nota defendantin the execution, maintain the action of replevin for the goods, *124 in the actual possession of the defendant, in the execu, tion, at the time of the levy made on them?
ínsíííulinn oí action of re-plevin, by (U£’t. in execution, is con-{erupt, which ought to be severely pufl-isihod-
And 2d. Can the officer, levying the execution, exonerate himself from a recovery in an action of replevin, by shewing that lie empannelied a jury, to ^try the right of property; and that the jury failed to decide, that the property belonged to the claimant?
v In regard to the first question, we are of opinion, that the defendant in the execution, cannot successfully maintain an action of replevin, against the officer making the levy. The institution of the action, by the defendant in the execution, would be a contempt of the authority of the court, rendering the judgment, upon which, the execution issued, and ought to be punished as such,' See L Chitty, 160,. and the authorities there cited.
If a defendant in the execution, after judgment had been legally entered against him, upon a full and jfair trial, were tolerated in bringing his action of re-plevin, and by it, to replevy the goods, taken in execution, there might be no end to the delays, which fhe defendant might thus create. Justice and the end of the law, would be effectually subdued; for, although, the defendant in the execuiion, and ^plaintiff in the action of replevin, would fail upon the trial, and judgment would be rendered in favor of the officer, for the restoration of fhe goods; yet the action might he again and again renewed, and delays, without end, effected. To prevent such abuses, and such '‘contempts of the authority of courts, to prevent the monstrous absurdity of rendering the remedies, afforded by law, with a view to redress wrongs, the means of defeating the very end to be accomplished; the defendant in an execution, who should thus prevent the action of replevin, might, and ought to be severely punished for contempt.
Although, such should be the rule, in respect to the defendant in the execution, the reasons for it, are not equally strong, in relation to those, whose property may be seised under executions, against others. Indeeed, we are of opinion, that the reason entirely ■Tails, where an execution issues against A, and ihs *125 afiicer levies on the property of B. It is a tresspass, on the part of the officer, to seise property not owned by the defendant in the'e’íecution; and we no reason, founded in good policy, which should prevent the real owner from Maintaining his act’|0n replevin, although some adjudged cases, may be found, which leanagainst it. Chity, 160, lays it down in general terms, “that no replevin lies for taken by the sheriff by virtue of the execution, and if any person should pretend to take out a replevin, the court would commit him for a contempt, &c.” But no goods can with propriety, be said to be taken by virtue of the execution, unless the goods belong to the defendant in the execution; for an execution against A, is no authority and constitutes nojustification for takingthe goods of B. Where the goods are taken by virtue of the execution, that is, when the goods of the defendant in the execution, are taken, we admit that it would be a contempt for any person, to pretend to take out a replevin. It would be more aggravated, for the friend of the defendant in the execution, to do it, than for the defendant to do it himself. These doctrines do not embrace the case of the goods, of a stranger to the execution and judgment, who, when they are taken in good faith, resorts to the action of replevin, to obtain redress. The ease of Thompson vs. Button, XIV. Johnson’s Rep. 84; and the case of Kerley vs. Hume, III. Monroe, 182, tolerates the opinion, that a stranger to the execution, may maintain his action of replevin. These cases, also prove, that the action of replevin, is not confined to injuries, resulting from ¿¡legal distresses for rent, damage, feasant, and the like. That it is a remedy, co-extensive with that of trespass, de bonis asporiutis, is established in New York, VII. Johnson, 140-143; and XIV. Johnson, 17. See also, Chitty, 159. We see no reason for restricting the remedy, by action of replevin, to narrower bounds in this stllte. The doctrines laid down by a majority of the court, in the case of Baldwin vs. Alexander, VII. Monroe, 424, and which are well fortified by thority, prove that an action of replevin, is an appropriate remedy, in behalf of all strangers, to an execution, whose property may be seised, by an officer, under color of the process.
real owner may maintain replevin against him therefor, It is a trespass' seize proper-tj, not owned by deft, in & t
Action ofre-plevin, is not suiting* from illegal dis-Jg®8tse¿ja°ra e feasanfantf0 the like, S'yco-extensive Wlth trespasc, * ap-r a<in be-hali of all strangers to oxecution, whose property may be seized by officer under color of pro-process.
Possession of bailee is possession of bailor. |
General property is sufficient to maintain replevin, as a general rule. Therefore, to maintain replevin, not necessary that taking be from pl’tff. in action.
Quaere. Does. naked bailment for safe keeping, give bailee such right, as to enable him to maintain re-plevin, if goods are taken.
If sheriff take property not I liable, he is trespasser.
In general, replevin can bo maintained, where trespass lies. 'ffertevin lies, i!legai se^uns by officers,
*126 Applying the foregoing views to the facts of this case, we iind nothing in them, which can lead us to decide, that the appellants were not entitled to maintain their action, merely, because the slaves in controversy, were seised by Harrias, to satisfy the execution againsts Richardson.
We are also of opinion, that the taking of the slaves from the immediate possession of Richardson, cannot prevent the appellants from maintaining this action, if it be true, as they allege, that Richardson was. no more than their bailee. The possession of the bailee, is the possession of the bailor. The general property of a chattel, commonly unites , with it, the possession in law, although, in fact, the thing may be actually-possessed by another; thus, the horse of the farmer is in his possession, in law, although, in fact, his overseer or apprentice, may be riding or working the horse, in the performance of business, exclusively his. The general property is sufficient to maintain the action as a general rule, Chitty, 158, It is not necessary, (as contended by the appellee’s counsel) to maintain the action of replevin, that the taking should be from the plaintiff in action. The taking may be from a feme sole, and after, marriage, the husband, alone, may maintain the action, Chitty, 159. Itisques-tionable, whether a mere naked bailment, for safe keeping, gives the bailee such a right, as t,o enable him, to maintain the action, in case the goods are taken from him. I. Johnson, 380.
In Crepon and others- vs. Stout. XVII. Johnson, 116, the plaintiffs were permitted to recover in reple-vin, although, the goods,were notin their possession, when taken by the sheriff’s vendee, who was defendant. If the defendant in the execution, is actually possessed of property as bailee, merely, say a horse, which is loaned to him to ride a few miles, the horse is not subject to the execution.' The sheriff must levy at his peril, and is a trespasser, if he*, take" property not liable. ' In general, the action of replevin, can be maintained, where trespass will lie» Pangburn vs. Patridge, VII. Johnson, 142. In Bouldin vs. Alexander, this court intimated, that a bill in chan-, eery, to enjoin a sale of property, illegally seised,. bj- *127 Vtn officer, might be tolerated; but for the remedy afforded by action of replevin. If the action is restricted, so that the remedy cannot extend to all of illegal seizures, by officers, there will still remain a class of cases, in which the owner of property, taken in execution, contrary to law, must stand by and see it sold, without power to prevent it; and be driven- at last, to his action of detinue and trover, and that possibly, against an insolvent vendee of the officer, in which his remedy would be a mockery.
Sheriff, or wait, until jur7is de~ manded by claimant of property, before he summon one.
*127 The answer to be given to the second question or point, will depend on the construction of the act of 1803, concerning the trial of the right of property, taken under execution. II. Dig. 1047. ,We have no doubt, that the legislature contemplated cases, in' the enactment of that statute, in which officers might levy executions upon property, not liable to be taken, because not owned by the defendants in the executions. It might frequently happen, that officers would levy executions on property, the ostensible ownership of which, was with the defendant in the execution, when the real ownership was with another. When the property thus levied on, was claimed by one, not a defendant in the execution, the officer’s situation became perilous and embarrassing. If he sold the property, and thereby converted it to the satisfaction of the execution, he became liable for its value, at least, to the real owner, provided, it was thereafter shewn, that the defendant in the execution, wag not the real owner. If the officer surrendered the property to the claimant, when in truth, it belonged to the defendant in the execution, he thereby became liable to the plaintiff in the execution, for its value. To relieve him from this embarrassing and responsible situation, the statute provides for empanneliing a jury, to try the right of property and declares, «should the claimant not succeed in establishing the property to be his, the sheriff, or other officer, as the case may be, shall sell the property, and not be liable to any suit, on account of such sale.”
l^'We are of opinion, that it is not necessary, that the sheriff should wait until a jury is demanded by the claimant of the property, before he summons one. The claimant might never make the demand. The *128 sheriff, or other officer, for his own safety, may summon and empannel the jury. Unless officers may . do this, it would be in the power of others, to render the statute, in respect to them, a dead letter, and to defeat its provisions.
When the jury is empannelled, and the claimant of the property does not succeed, what is the consequence? No more than this, the officer may then sell, and is “not liable to any suit, on account of such sale;” that is, he is not responsible to the claimant, for converting the property in satisfaction of the* execution, although, thereafter, such claimant might, in the action of trespass, trover, or detinue, be enabled clearly, to establish his right of property. But, does the statute, in case the sale is made, where the claimant fails to establish bis right of property, merge the original trespass in taking the property, wrongfully, in the sale, so as to protect the officer against the consequences of his trespass, as well as the consequences of converting the property in satisfying the exe<-cution? Suppose an officer, holding an execution against A. levies it to day, on the horse of B, and <?n tomorrow, B. institutes his action of trespass, for the injury; suppose, from any casualty, before the jury is empannelled to try the right of property, the circuit court should sit, and the suit for the trespass, should be called for trial, can the officer postpone the trial, until he shall have had an inquest before himself, as to the right of property, so that it may be seen, whether a jury will not find the horse subject to the execution, or disagree, which amounts to the same thing? If the officer can procure a postponement of the trial of the trespass suit, with that view, and: the jury, on the trial of the right of property, disagree, and the horse is sold, will such sale defeat the action of trespass? Without a clear and unequivocal declaration of the statute to that effect, we should feel great reluctance in so deciding. The cause of action, resulting from the taking, is complete, before the sale is effected, and the action, in the case supposed, is instituted for the trespass, before it is ascertained, under the statute, whether it will be the duty of the officer, to make the sale or not. The language of the statute, therefore, ought, to be direct, if the construction is to *129 ■prevail, that the subsequent sale shall operate as a release of a good cause of action; for such must bé the effect of deciding, that a sale of the property, after a disagreement of the jury exonerates the sheriff, or other officer, from damages, on account of the wrongful taking.
There are no words in the statute which will justify this construction; and’it cannot prevail, unless it be essential that it should, in order to secure to the-officer, the exemption from suit, on account of the sale. It may be contended, that an officer could nevef effect a sale Under execution, unless he was permitted to take the property, which is to be the subject of the sale; and that, whatever will protect him in making the sale, must necessarily protect him in the use of all the means, proper to accomplish the object to be effected, to wit: the sale. We acknowledge that there is much force in this reasoning, but we believe that a proper discrimination between the means to be used, and the end to be accomplished, will present the subject in such a point of view; as to leave but little difficulty.
The legislature has said to the executive officers, if you take the property of B, under an execution against A,- and B cannot establish his right, or will not, to the satisfaction of a jury, and you then sell if, you shall not be sued for the sale, that is, as we understand the statute, the officer is hot to be liable for the value of the property, converted by the sale.
But is this equivalent to saying, also, that the officer shall not be liable for the illegal taking and detention, up to the time of the sale? We think it is not. If, instead of selling the property, the officer returns it to the real owner, the defendant in the execution having paid the debt, are no damages to be awarded for the illegal taking and detention? Is the officer to be excused, because he would have sold, if the debt had not been settled; and, because, in case he had sold, he would then have been exonerated. This would be giving great lengths. It would not only be exonerating officers from liability, on accour§ of sales, actually made, but it would screen them, where they might have been made, had nothing turn *130 ed up, to supersede them. If the officer restores the property to the rightful owner, and he sues for the wrongful taking and detention, can he recover the value of the property? He cannot; because that has been restored to him. He can'only recover for the detention, and smart money, for the Wrong in taking, and the value of any injury the property may have sustained. If the property is never returned, but converted, all this, and the value of the property in addition, may be recovered.
Finding of jnrj, against claimant, on trial of right of property, exempts officer from ‘suit on account of sale of property,’ that is, from liability, for value of property, converted by sale. But, 1 does not exempt him from suit, by real ower, for wrongful tailing and detention, or / abuse of pro-/ perty before sale-
'Now, where the statute says, the officer shall not be liable to suit for the sale, we believe it means no more than to exonerate him from paying the value of the property, converted by that sale, and that it cannot be construed’to'deprive the real owner of the property, from ■ recovering for other injuries, distinct in their character and nature.
'The'reál dwnér, by the detention of his horse or his slave, is deprived of their labor. This is an injury to him. Who is to compensate him for it? The plaintiff and defendant in the execution, may be altogether ignorent of the levy. They cannot be made to pay it. The officer alone must pa?)’ it, or there is no remedy. Suppose the officer abuses the property, before the day of sale, by which, it is less valuable, and sells for less than otherwise it would have done, will the sale excuse him from liability, for the damage thus done to the real owner? We think it will not: if it; does, there is no remedy. We putthesecases,toshew that there are injuries, which the real owner of property may sustain, by the conduct of the officer, distinct from that inflicted by the sale; and that there is great propriety, in limiting the protection, afforded by the statute, to that, arising from the sale alone, to wit: the conversion of the property, whereby, the owner apparently sustains a loss, equal to its value when sold. We say apparently, because the owner is allowed to sue the purchaser, and may recover it in detinue, or its value in trover.
Limiting the protection afforded by the statute, in the maqner we have done, the real owner’s redress, although, against several, is coextensive with his injury. If he pursues the officer, with a view’ to render *131 pim liable for the whole, and the statute affords the protection, which we recognize:, the officer can avail himself of it, to lessen the damages for the value the property, converted -by the sale, and this will, inf the language of the statute-, be rendering him “noil liable to suit on account of such sale f and if- there be\ no other injury to the real owner., than that arising) from the sale, the officer will succeed in the action, to-' the cost of his adversary.. These princip.leS5.it seems to us,.give the proper application, and construction of the statute of 1803-; and will avoid the mischiefs, which seem to be so much.dreaded by the counsel for. the appellants, as likely to arise from extending the. protection of the statute, so as to excuse an officer. from trespass,, when he might be instrumental by means of a packed jury, in laying the foundation upon which his excuse must rest.
5>jnd¡ng<)f jury against ■ claimant, »a of property11’ Pre" owner from recovering . nominal dam-forlrespas^
„ot0piea¿¡”" finding of .iul7 upontri-bar Vr justification of tres-Pa8S fyr Me-of Sievin’ M by real owner,
Judgment for inre-^ch'damages assess for taking & detention of goods, and bis costs. Judgment for def’t. is for restoration of property, and his costs.
*131 According to our view, an officer, by the trespass, will at least, subjecfhimself to nominal damages, and ;:an in no case, find protection under the statute, beyond the valuó of the property sold. To that extent he shall have credit,.but,no further. .. -
it results from the foregoing reasoning, thatan officer cannot, by the finding of the jury, upon a trial of the right of property, taken by him under execution, justify a trespass, or plead such finding, in.bar of an action of trespass, for his-illegal seizure of the, property. It equally follows, that the verdict of such a jury, cannot be pldad in bar to an action of replev-in. Harriss, the coroner is not sued for a sale of the property, for no sale has yet.taken place; the thing therefore, has not yet happened, in. which he is protected by the statute, whet) it shall occur. The action of replevin, has put a stop to. the sale, and if the, appellants, succeed, the appellee will, never be per-milted.to make it; and hence,as in such an event,he will not have inflicted any injury5.by making the sale,the statute has nothing to operate upon, in protecting him on account of a sale.-
If the plaintiffs succeed, their judgment will- be for such damages, as the jury may assess for the taking, and unjust detention of the slaves, and costs, if-the defendant succeeds, he will be entitled to *132 menf, for the restoration of the slaves, and his coste,, and then he may proceed to seil them, which being done, he will be protected by the statute, from suits on account of the sale. The action of replevin, has arrested the officer, in his progress like an injunction would have done.
If def’t. in re-plevin, justify under execution, he must aver, in plea, that goods were property of def’t. in execution.
Marshall and Richardson, for appellants; CrHiende.., asid Triplet^, for appellees.
We cannot discover any thing in the finding of the jury, as plead, and which is admitted by the replevin,, that constitutes a bar to the plaintiff’s action. The pleas do not aver that the slaves were f he property of John C. Richardson, the defendantin the execution , and for the want of such an averment, we consider them radically defective, since the finding of the jury, on the trial of the right of property, constitutes no bar. The court, therefore, erred in giving judgment upon the demurrer to the replications, in favor of the defendant.
Wherefore, the judgment of the circuit court is reversed, and the cause remanded, with instructions* to permit the defendant, to amend his pleas, if he asks leave to do so, and to progress with ihe cause, in conformity hereto; and if he does not amend, then to render judgment upon the demurrer, in favor of the plaintiffs.
The appellants must recover their costs.